UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 07-334-GWU


JEANETTE JOHNSON,                                                    PLAINTIFF,


VS.                            **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                        DEFENDANT.


## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her application for Supplemental Security Income (SSI).  The appeal is

currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled.  If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)?  If yes, proceed to Step 3.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities?  If yes, proceed to Step 4.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

07-334  Jeanette Johnson

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled.  If no, proceed to Step 6.   See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  See 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.   See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

07-334  Jeanette Johnson

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  <u>Garner</u>, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1)

3

07-334  Jeanette Johnson

whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

07-334  Jeanette Johnson

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

07-334  Jeanette Johnson

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.

6

In such cases, the agency may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Jeanette Johnson, was found by an Administrative Law Judge (ALJ) to have a "severe" combination of impairments consisting of a seizure disorder, obesity, moderate chronic obstructive pulmonary disease, an anxiety disorder, a depressive disorder, and borderline intellectual functioning.  (Tr. 18).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Johnson retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 21-3).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 42, eighth grade education, and no work experience could perform any jobs if she were limited to "medium" level exertion and also had the following non-exertional restrictions.  (Tr. 442).  She: (1) could not climb ladders, ropes, or

07-334  Jeanette Johnson

scaffolds; (2) could have no exposure to dust, fumes, odors, gases, hazards, heights, or bodies of water; and (3) would have a moderately limited ability to deal with the public, respond to changes in the work setting, carry out detailed instructions, maintain regular attendance and be punctual within customary tolerances. (Tr. 442-3). The VE responded that there were jobs that such a person could perform, such as dishwasher and packer, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 443).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.[1]

Although Mrs. Johnson was found to have certain "severe" physical impairments, she only challenges the mental restrictions in the hypothetical question on appeal.

Mrs. Johnson testified that one of the reasons she was unable to work was nervousness and panic attacks and she had been psychiatrically hospitalized in October, 2005 because she was hearing voices and hurting herself. (Tr. 428, 432). She was being treated at the Adanta Mental Health Clinic on an outpatient basis

---

[1]By way of background, the plaintiff had previously received SSI benefits from October, 1998 to July, 2002, when they were terminated due to medical improvement, a determination which was upheld in an ALJ decision in 2004. (Tr. 34-42). The plaintiff did not appeal the decision, but instead chose to file her current application, with a protective filing date of December 14, 2004. (Tr. 14).

and receiving medications.  (Tr. 431).  However, she still heard voices when she was by herself, approximately every other day.  (Tr. 432-3).  She did not go anywhere alone, but got along with her neighbors and played card games and word puzzles as a hobby.  (Tr. 433-4).  Although she could make simple meals, her son did most of the cooking.  She would clean house and go to her sister's to do laundry.  (Id.).  Educationally, she had been in Special Education and could not read well, but was able to write a short grocery list.  (Tr. 435).

The plaintiff's sister also testified at the hearing that Mrs. Johnson got nervous in crowds and had trouble being by herself.  (Tr. 440-1).  When they went to the grocery store, her sister would stay very close by, and complete shopping as quickly as possible.  (Tr. 441).

The plaintiff's landlady, Eva Berryman, also provided a statement saying that she saw Mrs. Johnson twice a week, that she was a "little slow" and could stay focused on simple conversations, but was very nervous and seemed frightened to be alone.  (Tr. 83).  She believed that the plaintiff stayed in her sister's apartment in the same complex.  She had also heard from another tenant that Mrs. Johnson had become hysterical after a neighbor got into a fight with her boyfriend near her sister's door.  (Id.).

The plaintiff underwent a consultative psychological evaluation by Licensed Psychological Associate Annette Freel, under the supervision of Licensed Clinical

07-334  Jeanette Johnson

Psychologist Christopher Catt, on April 20, 2005.  The plaintiff described nerves, panic attacks, and limited education.  (Tr. 275-6).  She had never been employed or filled out an application for a job.  Despite her problems with depression, anxiety, stress, panic attacks, and hearing voices, she had had no mental health services since 1998 and was not able to purchase the anti-depressant medication her doctor had prescribed.  (Tr. 276-7).  She was able to afford to smoke one pack of cigarettes a day, however.  (Tr. 277).[2]  She also described her mood as being "pretty good sometimes."  (Id.).  She stated that she was primarily responsible for the household chores and paying bills, went shopping with her sister every two weeks, would watch TV and sit outside, and interacted with her family and neighbors daily.  (Tr. 278).  Due to poor effort on testing, the examiner considered her IQ scores between 58 and 62 to be invalid.  (Tr. 279).  She diagnosed an anxiety disorder, a depressive disorder, malingering, and probable borderline intellectual functioning, with a current Global Assessment of Functioning (GAF) score of 55.  (Tr. 281).  A GAF score of 55 represents "moderate" symptoms or moderate difficulty in social, occupational, or school functioning.  Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision) (DSM-IV-TR), p. 34. In terms of specific functional restrictions, the examiner noted a moderate limitation

---

[2]In Sias v. Secretary of Health and Human Services, 861 F.2d 475, 480 (6th Cir. 1988), the Sixth Circuit discounted the plaintiff's assertion that he could not afford support hose in light of his habit of smoking two packs of cigarettes a day.

in the plaintiff's ability to tolerate the stress and pressure of day-to-day employment, and a "slight" limitation in her ability to sustain attention and concentration toward the performance of simple, repetitive tasks.  (Id.).

State agency psychological reviewers Ed Ross and Laura Cutler reviewed the evidence in June and September, 2005, respectively, and concluded that Mrs. Johnson would be moderately limited in several areas.  (Tr. 303-5, 307-9).  The ALJ adopted their restrictions for the hypothetical question.

In October, 2005, the plaintiff voluntarily admitted herself to the psychiatric unit at Lake Cumberland Hospital due to depression, nervousness, and the belief that she was seeing and talking to her late husband.  (Tr. 360).   She was also afraid to be around people.  She was admitted for eight days, and discharged with a diagnosis of recurrent major depressive disorder with psychotic features, "currently stable," and a GAF of 45-50. (Tr. 358).  A GAF score in this range reflects serious symptoms or serious impairment in social, occupational, or school functioning per the DSM-IV-TR.   The psychiatrist noted that her perceptual disturbances had improved with medication and she denied having any visual or auditory hallucinations at the time of discharge.  (Tr. 359).  She was to follow up with the Adanta clinic for medications and individual therapy.  (Tr. 358).  No specific functional restrictions were given.

07-334  Jeanette Johnson

The staff psychiatrist at Adanta interviewed Mrs. Johnson on November 10, 2005, and noted her complaints of seeing and hearing things, along with hitting her head on walls, and also noted that she was applying for disability.  (Tr. 373-4).  Mrs. Johnson stated that she could not afford to fill the prescriptions she had been given at the hospital.  Her mood and affect were depressed, and the psychiatrist also diagnosed a major depressive disorder with psychotic features and a GAF of 50.  (Tr. 376).  Her medications were restarted.  (Id.).

Subsequent counseling notes indicate that the plaintiff was describing feeling "a lot better" in February, 2006 (Tr. 380), stated she was "doing much better" overall in March, 2006 (Tr. 379), was "all right" in May, 2006 despite not taking her medication all the time (Tr. 390) and stated that the medication was "really helping me" later the same month, while denying any problems with sleep, depression, or anxiety (Tr. 389).

Two weeks later, however, one of the plaintiff's Adanta counselors, Vaunette Baker, a Licensed Psychological Associate, prepared a mental medical source statement indicating that the plaintiff had no useful ability to function in many areas due to low intellectual functioning, a poorly controlled seizure disorder, and a history of major depression with psychotic features.  (Tr. 347).

At Mrs. Johnson's next Adanta counseling appointment two weeks after the Baker assessment, she told another counselor that she was "feeling pretty good"

12

with no depression or anxiety.  (Tr. 387).  The last available counseling note is dated August 23, 2006, at which time Mrs. Johnson reported some conflict with her neighbor which had left her more depressed, and the counselor also described "largely situational" anxiety.  (Tr. 385).  Her sleep and appetite remained good, and she felt her current medications were effective.  (Id.).

The plaintiff argues that the ALJ committed error in rejecting the assessment by Vaunette Baker.  The ALJ discounted the assessment because Mrs. Johnson had testified that she had filled out the medical source statement by asking the plaintiff herself whether she was fair or poor in each category.  The implication was that Baker was merely repeating what the plaintiff claimed.  (Tr. 445).  The ALJ additionally noted that the counselor had identified no specific clinical findings or medical evidence to support limitations attributed to low intellectual functioning, seizure disorder and major depression.  (Tr. 20).  He went on to state that he did not find the plaintiff's subjective complaints and allegations to be wholly credible.  (Id.).

Counsel for the plaintiff makes several points in opposition to the ALJ's conclusions.  First, counsel argues that the plaintiff very likely misunderstood the ALJ's questions regarding filling out the form, since the form itself was dated June 14, 2006, and treatment notes state that the plaintiff had not been seen between May 31 and June 28.  (Tr. 386-9).  While it is true that there is no record of a specific counseling session between those days, it does not preclude the possibility

13

07-334  Jeanette Johnson

that the plaintiff made a special visit to have a form filled out.[3]  Moreover, the ALJ

could have discounted Vaunette Baker's conclusions due to the conflict between the

plaintiff's statements in the counseling notes, as previously described, and the

extreme limitations listed on the form.  It is also true that at least one of the factors

mentioned by Baker, the plaintiff's seizure disorder, was a physical issue outside

her area of psychological expertise.

    The plaintiff also argues that the ALJ committed error in not considering the

statement of the plaintiff's landlady, Eva Berryman, citing Social Security Ruling

(SSR) 06-03p.  The Commissioner's regulations provide that information from other

sources should be considered, but under the facts of the present case, there is no

reversible error.  Some of Eva Berryman's statement was based on second-hand

_____

[3]From the specific questions and answers at the administrative hearing, it is possible to see how the ALJ could have drawn the conclusion that the plaintiff was present while the form was being filled out, although the plaintiff appeared to initially deny it.  The relevant questions and answers are as follows.

    Q:  Do you know--did she fill it out in front of you, Ms. Johnson?
    A:  No.
    Q:  Did she ask you any of these questions?
    A:  Yeah, when I saw her she did, yes.
    Q:  I mean, when she puts the X's in the boxes, is--did you tell her--was she asking you like fair and poor and you'd tell her?
    A:  Yes.
    Q:  Okay.  That's how she filled it out?
    A:  Yes.

(Tr. 445).

14

information, as previously described.  Her belief that the plaintiff was frightened to be alone and had below-average intelligence is consistent with some other information in the transcript, but is less compelling than the plaintiff's own statements that she was able to socialize with neighbors and family, not to mention the indications from Lake Cumberland and Adanta that her symptoms improved substantially when she used medication and had no situational stressors.  Under the present factual situation, the interests of justice would not be served by a remand merely to force the ALJ to consider the lay opinion which had been given before the plaintiff even started regular mental health treatment.

Finally, the plaintiff cites evidence submitted to the Appeals Council which indicates that she was admitted to Lake Cumberland in November, 2006 because of suicidal ideation brought on by "acute stress which was mainly created by her son." (Tr. 400).  In general, "where the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision."  Cline v. Commissioner of Social Security, 96 F.3d 146, 148 (6th Cir. 1996) (citation omitted).  The case can be remanded for further administrative proceedings if the plaintiff shows that the evidence is both new and material and that there was good cause for not presenting it in the prior proceedings.  Id.  In the present case, the plaintiff has not requested

07-334  Jeanette Johnson

a remand merely because of the new evidence and has suggested no reason for not submitting it to the ALJ, whose decision was not issued until January 12, 2007. The evidence would also be of questionable materiality, assuming a remand had been requested, since it appears that the hospitalization was brought on by situational stress.  In any case, since there has been no request for a remand for consideration of the new evidence, the matter need not be explored further.

The decision will be affirmed.

This the 30th day of July, 2008.

**Signed By:**

__G. Wix Unthank__

**United States Senior Judge**